**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **IN RE: PARAQUAT PRODUCTS** | ) | Case No. 3:21-md-3004-NJR |
| **LIABILITY LITIGATION** | ) | |
| | ) | MDL No. 3004 |
| This document relates to: | ) | |
| | ) | Hon. Judge Nancy J. Rosenstengel |
| *Coward v. Syngenta AG et al.,* | ) | |
| No. 3:21-pq-01560-NJR | ) | |

**DEFENDANTS SYNGENTA CROP PROTECTION, LLC AND SYNGENTA AG'S**
**ANSWER AND DEFENSES**

Defendants Syngenta Crop Protection, LLC and Syngenta AG (collectively, "Syngenta"),

through undersigned counsel, answers the correspondingly numbered paragraphs of the Complaint

of Plaintiff Matthew Coward as follows:

**ANSWER**

**STATEMENT OF THE CASE[1]**

1.    Plaintiff MATTHEW COWARD suffers from Parkinson's disease caused by his

exposure to the herbicide Paraquat.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the

allegation that Plaintiff suffers from Parkinson's disease, and therefore denies that allegation.

Syngenta denies the remainder of the allegations in this paragraph.

2.    Plaintiff MATTHEW COWARD is a Florida resident.

---

[1]    Headings from the Complaint are restated here only for ease of reference and are not
incorporated herein.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

3.    Defendants are companies that since the 1960s have manufactured, distributed, licensed, marketed, and sold Paraquat for use in the United States, including Florida.

**ANSWER:**    Syngenta admits that certain Syngenta entities, affiliates, and predecessors have, at different points in time, been involved in the manufacture and sale of paraquat.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

4.    Plaintiff brings this action to recover damages for personal injuries resulting from the injured Plaintiff's exposures to Paraquat manufactured, distributed, and sold by Defendants.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

5.    Defendants' tortious conduct, including their negligent acts and omissions in the research, testing, design, manufacture, marketing, and sale of Paraquat, caused Plaintiff injuries. At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that Paraquat was a highly toxic substance that can cause severe neurological injuries and impairment, and should have taken steps in their research, manufacture, and sale of Paraquat to ensure that people would not be harmed by foreseeable uses of Paraquat.

**ANSWER:**    Syngenta denies the allegations.

### JURISDICTION

6.    This Court has jurisdiction over Defendants and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and each Defendant.

Plaintiff is a resident of Florida; SCPLLC is a Delaware limited liability company with its principal place of business in Greensboro, North Carolina (SCPLLC is a wholly-owned subsidiary of Defendant SAG); SAG is a foreign corporation with its principal place of business in Basel, Switzerland; Chevron U.S.A., Inc. is a Pennsylvania corporation with its principal place of business in San Ramon in Contra Costa County, California. Defendants are all either incorporated and/or have their principal place of business outside of the state in which the Plaintiff resides.

**ANSWER:**    This paragraph calls for a legal conclusion to which no response is due. To the extent a response is due, Syngenta admits that Syngenta Crop Protection, LLC is a Delaware Limited Liability Company with its principal place of business in Greensboro, North Carolina. SAG is a foreign corporation with its principal place of business in Basel, Switzerland. To all else, Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

7.    The amount in controversy between Plaintiff and Defendants exceeds $75,000, exclusive of interest and cost.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

## VENUE

8.    Venue is proper within the Southern District of Illinois pursuant to Case Management Order No. 1 of MDL No. 3004, *In re: Paraquat Products Liability Litigation*, allowing cases that would be subject to transfer to the MDL to be filed directly in the Southern District of Illinois. *In re: Paraquat Products Liability Litigation*, 3:21-md-03004-NJR, ECF Document #16. This complaint alleges injury due to Paraquat, is subject to jurisdiction of the federal courts due to the diversity of the parties, and is subject to transfer pursuant to 28 U.S.C.

§ 1407 and the transfer order of the Judicial Panel on Multidistrict Litigation. *In re: Paraquat Products Liability Litigation*, 544 F. Supp. 3d 1373 (J.P.M.L. June 7, 2021).

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, Syngenta states that it is not contesting venue for purposes of this specific Plaintiff's claims. Pursuant to CMO Nos. 8 & 12, Syngenta reserves its personal jurisdiction, *Lexecon*, and venue-related objections for cases that have not been selected as bellwether plaintiffs.

### PARTIES

9.    The true names or capacities whether individual, corporate, governmental or associate, of the defendants named herein as Doe are unknown to Plaintiff who therefore sues said defendants by such fictitious names. Plaintiff prays for leave to amend this Complaint to show their true names and capacities and/or bases for liability when the same have been finally determined.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

10.    Plaintiff is informed and believes, and upon such information and belief alleges, that each of the defendants designated herein as Doe is strictly, negligently, or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently or otherwise caused injury and damages proximately to Plaintiff as is hereinafter alleged.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is due, Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

11.     At all times herein mentioned, each and every one of the Defendants was the agent, servant, employee, joint venturer, alter ego, successor-in-interest, and predecessor-in-interest of each of the other, and each was acting within the course and scope of their agency, service, joint venture, alter ego relationship, employment, and corporate interrelationship.

**ANSWER:**     Syngenta denies the allegations.

12.     U.K. manufacturer Imperial Chemical Industries Ltd. a/k/a Imperial Chemical Industries PLC ("ICI") first introduced Paraquat to world markets in or about 1962 under the brand name GRAMOXONE®.

**ANSWER:**     Syngenta denies the allegations.

13.     In or about 1971, ICI created or acquired a wholly-owned U.S. subsidiary organized under the laws of the State of Delaware, which was ultimately known as ICI Americas Inc. ("ICI Americas").

**ANSWER:**     Syngenta admits that ICI acquired Atlas Chemical Industries, a Delaware company, in 1971.  To the extent not specifically admitted herein, denied.

14.     Chevron Chemical Company was a corporation organized under the laws of the State of Delaware.

**ANSWER:**     Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

15.     Pursuant to distribution and licensing agreements with ICI and ICI Americas, Chevron Chemical Company had exclusive rights to distribute and sell Paraquat in the United States and did in fact manufacture, formulate, distribute, and sell Paraquat in the United States, including in Florida for use in Florida, from approximately 1964 until approximately 1986.

**ANSWER:**    Syngenta admits that ICI and Chevron entered into agreements regarding the licensing and distribution of paraquat.  To the extent not specifically admitted herein, denied.

16.    Chevron U.S.A., Inc. is the successor-in-interest to Chevron Chemical Company.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

17.    At all relevant times, Chevron Chemical Company acted as the agent of Chevron U.S.A., Inc. in selling and distributing Paraquat in the U.S. At all relevant times, Chevron Chemical Company was acting within the scope of its agency in selling and distributing Paraquat. Chevron U.S.A., Inc. is liable for the acts of its agent.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

18.    From approximately 1964 through approximately 1986, pursuant to distribution and licensing agreements with Chevron Chemical Company, SAG's and/or SCPLLC's predecessors-in-interest, ICI and ICI Americas, and Does One through Sixty manufactured some or all of the Paraquat that Chevron Chemical Company distributed and sold in the United States, including in Florida for use in Florida.

**ANSWER:**    Syngenta admits that ICI and Chevron entered into certain agreements regarding the licensing and distribution of paraquat, and that Chevron had a license to distribute and sell paraquat in the United States for a certain period of time.  To the extent not specifically admitted herein, denied.

19.    From approximately 1964 through approximately 1986, pursuant to distribution and licensing agreements between and among them, ICI, ICI Americas, Chevron Chemical

Company, and Does One through Sixty acted in concert to register, manufacture, formulate, and distribute and sell (through Chevron Chemical Company) Paraquat for use in the U.S., including in Florida for use in Florida, and their respective successors-in-interest, SAG, SCPLLC, and Chevron U.S.A., Inc., are jointly liable for the resulting injuries alleged herein.

**ANSWER:**    Syngenta denies the allegations.

20.    After 1986, SCPLLC, Does One through Sixty, and/or their predecessors-in-interest sold and distributed and continue to sell and distribute Paraquat in the United States, including in Florida for use in Florida.

**ANSWER:**    Syngenta admits that it or its predecessors has sold products containing paraquat in the United States for at least some of the time period after 1986.  To the extent not specifically admitted, denied.

21.    As a result of mergers and corporate restructuring, SAG is the successor-in-interest to ICI.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.

22.    As a result of mergers and corporate restructuring, SCPLLC is the successor-in-interest to ICI Americas, Inc.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.

23.    Thus, from approximately 1964 through the present, the Syngenta Defendants, Does One through Sixty, or their predecessors-in-interest have manufactured, formulated, distributed, and sold Paraquat for use in the U.S., including in Florida for use in Florida.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

## PLAINTIFF'S EXPOSURE TO PARAQUAT

24.    Plaintiff MATTHEW COWARD was a farmer who worked at his family's farm, who was exposed to Paraquat from approximately 1978 to approximately 2000 in Charlotte County, FL: (1) when it was mixed, loaded, applied, and/or cleaned; (2) as a result of spray drift (the movement of herbicide spray droplets from the target area to an area where herbicide application was not intended, typically by wind); and/or (3) as a result of contact with sprayed plants.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations that Plaintiff was a farmer at a family farm in Charlotte County, FL from approximately 1978 to approximately 2000, and therefore denies them. Syngenta denies the remainder of the allegations in this paragraph.

25.    At all relevant times, it was reasonably foreseeable that when Paraquat was used in the intended or a reasonably foreseeable manner, users of Paraquat and persons nearby would be exposed to it.

**ANSWER:**    Syngenta denies the allegations.

26.    At all relevant times, it was reasonably foreseeable that Paraquat could enter the human body: (1) through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage were present); (2) through the olfactory bulb; (3) through respiration into the lungs; and (4) through ingestion into

8

the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways.

**ANSWER:**    Syngenta denies the allegations.

### PARAQUAT CAUSES PARKINSON'S DISEASE

27.    At all relevant times, it was reasonably foreseeable that Paraquat that entered a human body could ultimately enter the brain.

**ANSWER:**    Syngenta denies the allegations.

28.    At all relevant times, it was reasonably foreseeable that Paraquat that entered a human body could induce the misfolding of the alpha synuclein protein.

**ANSWER:**    Syngenta denies the allegations.

29.    Parkinson's disease is a progressive neurodegenerative disorder of the brain that affects primarily the motor system–the part of the central nervous system that controls movement.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

30.    The characteristic symptoms of Parkinson's disease are its "primary" motor symptoms: resting tremor (shaking movement when the muscles are relaxed), bradykinesia (slowness in voluntary movement and reflexes), rigidity (stiffness and resistance to passive movement), and postural instability (impaired balance).

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

31.    Parkinson's disease's primary motor symptoms often result in "secondary" motor symptoms such as freezing of gait; shrinking handwriting; mask-like expression; slurred, monotonous, quiet voice; stooped posture; muscle spasms; impaired coordination; difficulty swallowing; and excess saliva and drooling caused by reduced swallowing movements.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

32.    Non-motor symptoms—such as loss of or altered sense of smell; constipation; low blood pressure on rising to stand; sleep disturbances; and depression—are present in most cases of Parkinson's disease, often for years before any of the primary motor symptoms appear.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

33.    There is currently no cure for Parkinson's disease; no treatment will stop or reverse its progression; and the treatments most commonly prescribed for its motor symptoms tend to become progressively less effective, and tend to increasingly cause unwelcome side effects the longer they are used.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

34.    One of the primary pathophysiological hallmarks of Parkinson's disease is the selective degeneration and death of dopaminergic neurons (dopamine-producing nerve cells) in a part of the brain called the substantia nigra pars compacta ("SNpc").

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

35.    Dopamine is a neurotransmitter (a chemical messenger that transmits signals from one neuron to another neuron, muscle cell, or gland cell) that is critical to the brain's control of motor function (among other things).

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits dopamine is a neurotransmitter.  To the extent not specifically admitted herein, denied.

36.    The death of dopaminergic neurons in the SNpc decreases the production of dopamine. Once dopaminergic neurons die, they are not replaced; when enough dopaminergic neurons have died, dopamine production falls below the level the brain requires for proper control of motor function, resulting in the motor symptoms of Parkinson's disease.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

37.    The presence of Lewy bodies (insoluble aggregates of a protein called alpha-synuclein) in many of the remaining dopaminergic neurons in the SNpc is another of the primary pathophysiological hallmarks of Parkinson's disease.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

38.    Dopaminergic neurons are particularly susceptible to oxidative stress, a disturbance in the normal balance between oxidants present in cells and cells' antioxidant defenses.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context. The allegations will also be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, Syngenta admits that certain scientists have hypothesized that dopaminergic neurons may be damaged by oxidative stress depending on the experimental circumstances.  To the extent not specifically admitted herein, denied.

39.    Scientists who study Parkinson's disease generally agree that oxidative stress is a major factor in—if not the precipitating cause of—the degeneration and death of dopaminergic neurons in the SNpc and the accumulation of Lewy bodies in the remaining dopaminergic neurons that are the primary pathophysiological hallmarks of the disease.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific and medical matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

40.   Paraquat is highly toxic to both plants and animals, creating oxidative stress that causes or contributes to cause the degeneration and death of plant or animal cells.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

41.   Paraquat creates oxidative stress in the cells of plants and animals because of "redox properties" that are inherent in its chemical composition and structure: it is a strong oxidant, and it readily undergoes "redox cycling" in the presence of molecular oxygen, which is plentiful in living cells.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  To the extent a response is required, denied.

42.   The redox cycling of Paraquat in living cells interferes with cellular functions that are necessary to sustain life– with photosynthesis in plant cells, and with cellular respiration in animal cells. The redox cycling of Paraquat in living cells creates a "reactive oxygen species" known as superoxide radical, an extremely reactive molecule that can initiate a cascading series of chemical reactions that creates other reactive oxygen species that damage lipids, proteins, and nucleic acids, molecules that are essential components of the structures and functions of living cells. Because the redox cycling of Paraquat can repeat indefinitely in the conditions typically

present in living cells, a single molecule of Paraquat can trigger the production of countless molecules of destructive superoxide radical.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context.  The allegations will also be the subject of expert testimony.  Subject to those qualifications, and within the narrow context of this legal filing, and as phrased, denied.

43.    Paraquat's redox properties have been known to science since at least the 1930s.

**ANSWER:**    The allegations contained in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

44.    It has been scientifically known since the 1960s that Paraquat (due to its redox properties) is toxic to the cells of plants and animals. The same redox properties that make Paraquat toxic to plant cells and other types of animal cells make it toxic to dopaminergic neurons in humans– that is, Paraquat is a strong oxidant that interferes with the function of, damages, and ultimately kills dopaminergic neurons in the human brain by creating oxidative stress through redox cycling.

**ANSWER:**    The allegations contained in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

45.    Paraquat is one of only a handful of toxins that scientists use to produce animal models of Parkinson's disease, i.e., use in a laboratory to artificially produce the symptoms of Parkinson's disease in animals.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

46.   Animal studies involving various routes of exposure have found that Paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons in the SNpc, other pathophysiology consistent with that seen in human Parkinson's disease, and motor deficits and behavioral changes consistent with those commonly seen in human Parkinson's disease.

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

47.   Hundreds of in vitro studies (experiments in a test tube, culture dish, or other controlled experimental environment) have found that Paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons (and many other types of animal cells).

**ANSWER:**   The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and appropriate context and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

48.   Epidemiological studies have found that exposure to Paraquat significantly increases the risk of contracting Parkinson's disease. A number of studies have found that the risk of Parkinson's disease is more than double in populations with occupational exposure to Paraquat compared to populations without such exposure.

**ANSWER:**    The allegations in this paragraph are simplified and incomplete characterizations of complex scientific matters that should be considered with full and that will be the subject of expert testimony.  Syngenta therefore denies the allegations.

49.    These convergent lines of evidence (toxicology, animal experiments, and epidemiology) demonstrate that Paraquat exposure generally can cause Parkinson's disease.

**ANSWER:**    Syngenta denies the allegations.

### PARAQUAT REGULATION

50.    The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., which regulates the distribution, sale, and use of pesticides within the U.S., requires that pesticides be registered with the U.S. Environmental Protection Agency ("EPA") prior to their distribution, sale, or use, except as described by FIFRA. 7 U.S.C. 136a(a).

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

51.    Paraquat is a "restricted use pesticide" under federal law, *see* 40 C.F.R. § 152.175, which means it is "limited to use by or under the direct supervision of a certified applicator," and it cannot be sold, used, or possessed by any person in Florida without the proper licensing and permitting.

**ANSWER:**    Syngenta admits that paraquat is a restricted use pesticide.  The remainder of this paragraph contains legal conclusions to which no response is due. To the extent a response is required, Syngenta admits that Plaintiff accurately quotes a portion of 40 C.F.R. § 152.175, but denies that Plaintiff has completely and accurately explained the terms of this provision. To the extent a further response is due, denied.

52.     As part of the pesticide registration process, the EPA requires, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

53.     As a general rule, FIFRA requires registrants, the chemical companies registered to sell the pesticides, to perform health and safety testing of pesticides. However, FIFRA does not require the EPA itself to perform health and safety testing of pesticides, and the EPA generally does not perform such testing.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

54.     The EPA registers (or re-registers) a pesticide if it is persuaded, based largely on studies and data submitted by the registrant, that: (1) its composition is such as to warrant the proposed claims for it, 7 U.S.C. § 136a(c)(5)(A); (2) its labeling and other material required to be submitted comply with the requirements of FIFRA, 7 U.S.C. § 136a(c)(5)(B); (3) it will perform its intended function without unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(C); and (4) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment, 7 U.S.C. § 136a(c)(5)(D).

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

55.    FIFRA defines "unreasonable adverse effects on the environment" as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is required, Syngenta admits that Plaintiff accurately quotes one definition of "unreasonable adverse effects on the environment" under 7 U.S.C. § 136(bb), but denies that Plaintiff has completely and accurately explained the terms of this provision.

56.    Under FIFRA, "[a]s long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of [FIFRA]." 7 U.S.C. § 136a(f)(2). However, FIFRA further provides that "[i]n no event shall registration of an article be construed as a defense for the commission of any offense under [FIFRA]." 7 U.S.C. § 136a(f)(2).

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

57.    The distribution or sale of a pesticide that is misbranded is an offense under FIFRA, which provides in relevant part that "it shall be unlawful for any person in any State to distribute or sell to any person ... any pesticide which is ... misbranded." 7 U.S.C. § 136j(a)(1)(E). A pesticide is misbranded under FIFRA if, among other things: (1) its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular, 7 U.S.C. § 136(q)(1)(A); (2) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment, 7 U.S.C. § 136(q)(1)(F); or (3) the label does not

18

contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment," 7 U.S.C. § 136(q)(1)(G).

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

58.    As a result, a pesticide may be misbranded despite an EPA determination that it met FIFRA's registration criteria. In other words, notwithstanding its registration, a pesticide is misbranded if its label contains "false or misleading" statements, has inadequate instructions for use, or omits warnings or cautionary statements necessary to protect human health. Similarly, a pesticide may be found to cause unreasonable adverse effects on humans when used according to the approved label despite a determination by the EPA that it would not.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

59.    Plaintiff does not seek in this action to impose on Defendants any labeling or packaging requirement in addition to or different from those required under FIFRA. Any allegation in this Complaint that a Defendant breached a duty to provide adequate directions for the use of or warnings about Paraquat, breached a duty to provide adequate packaging for Paraquat, concealed, suppressed, or omitted to disclose any material fact about Paraquat, or engaged in any unfair or deceptive practice regarding Paraquat, is intended and should be construed to be consistent with that alleged breach, concealment, suppression, or omission, or unfair or deceptive practice having rendered the Paraquat "misbranded" under FIFRA. However, Plaintiff brings claims and seeks relief in this action only under state law, and does not bring any claims or seek any relief in this action under FIFRA.

19

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

### Acts of Syngenta Defendants

60.    SAG is a foreign corporation organized and existing under the laws of Switzerland, with its principal place of business in Basel, Switzerland. It is a successor by merger or continuation of business to its corporate predecessors, including but not limited to ICI.

**ANSWER:**    Syngenta admits that SAG is a foreign corporation organized and existing under the laws of Switzerland, with its principal place of business in Basel, Switzerland. The remainder of this paragraph contains legal conclusions to which no response is due.

61.    SCPLLC is a limited liability company organized under the laws of the State of Delaware. It is a successor by merger or continuation of business to its corporate predecessors, including but not limited to ICI Americas. SCPLLC is registered with the State of Florida, Secretary of State to do business in the State of Florida.

**ANSWER:**    Syngenta admits that SCPLLC is a Delaware LLC and is registered to do business in Florida.  The remainder of this paragraph contains legal conclusions to which no response is due.

62.    SCPLLC or its corporate predecessors have sufficient minimum contacts with the State of Florida and have purposefully availed themselves of the privileges of conducting business in the State of Florida, in that they:

    a.    secured and maintained the registration of Paraquat products and other pesticides to enable themselves and others to manufacture, distribute, sell, and use these products in the State of Florida;

    b.    marketed, licensed, advertised, distributed, sold, and delivered Paraquat and other pesticides to chemical companies, licensees, distributors, and dealers whom they

expected to distribute and sell Paraquat and other pesticides in or for use in the State of Florida, including the Chevron Defendants and "Syngenta Retailers," as well as to applicators and farmers in the State of Florida;

c.    employed or utilized sales representatives to market and sell Paraquat and other pesticides in Florida;

d.    performed and funded the testing of pesticides in the State of Florida.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

63.    SCPLLC's contacts with the State of Florida are related to or gave rise to this controversy.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

64.    SAG exercises an unusually high degree of control over SCPLLC, such that SCPLLC is the agent or mere instrumentality of SAG. SCPLLC's contacts with Florida are thus imputed to SAG for purposes of jurisdiction. See *City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550 (S.D. Ill. 2011).

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is required, denied.

**Acts of Chevron Defendants**

65.    Chevron U.S.A., Inc. is a corporation organized under the laws of the State of Pennsylvania, with its headquarters and principal place of business in San Ramon, California. Chevron U.S.A., Inc. is registered with the State of Florida, Secretary of State to do business in the State of Florida.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

66.    Does One through Sixty are corporate entities which are agents, joint venturers, alter-egos, successors-in-interest, and predecessors-in-interest to Chevron U.S.A., Inc. Does One through Sixty were each acting within the course and scope of their agency, joint venture, alter-ego relationship, and corporate interrelationship. The exact nature, relation, and corporate structure of Does One through Sixty have not yet been finally determined. Plaintiff reserves the right to amend this complaint with corporate allegations when they are finally determined.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

67.    Chevron U.S.A., Inc. and/or its corporate predecessors and Doe Defendant's have sufficient minimum contacts with the State of Florida and have purposefully availed themselves of the privileges of conducting business in the State of Florida, in that they:

     a.    secured and maintained the registration of Paraquat products and other pesticides to enable themselves and others to manufacture, distribute, sell, and use these products in the State of Florida;

     b.    marketed, licensed, advertised, distributed, sold, and delivered Paraquat and other pesticides to chemical companies, licensees, distributors, and dealers whom they expected to distribute and sell Paraquat and other pesticides in or for use in the State of Florida, including the "Syngenta Retailers," as well as to applicators and farmers in the State of Florida;

     c.    employed or utilized sales representatives to market and sell Paraquat and other pesticides in Florida;

     d.    performed and funded the testing of pesticides in the State of Florida.

**ANSWER:**   Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

68.    Chevron U.S.A., Inc.'s contacts with the State of Florida are related to or gave rise to this controversy.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

**DEFENDANTS' TORTIOUS CONDUCT RESULTED IN
MATTHEW COWARD DEVELOPING PARKINSON'S DISEASE**

69.    Plaintiff MATTHEW COWARD hereby refers to, incorporates, and re-alleges by this reference as though set forth in full, each and every allegation hereinabove and makes them a part of the following allegations.

**ANSWER:**    Syngenta incorporates its prior responses as if fully restated herein.

70.    Plaintiff MATTHEW COWARD is a resident of Punta Gorda, Charlotte County, Florida.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

71.    Plaintiff MATTHEW COWARD was exposed to Paraquat manufactured and sold by Defendants.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

72.    Plaintiff MATTHEW COWARD worked at his family's farm in Florida from approximately 1978 to approximately 2000, where he personally sprayed Paraquat.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

73.    During this time, Plaintiff MATTHEW COWARD was in close contact to the Paraquat that was designed, manufactured, and distributed by Defendants, and each of them. During this time, Plaintiff MATTHEW COWARD would also mix, load, spray, and/or clean Paraquat.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

74.    The Paraquat to which Plaintiff MATTHEW COWARD was exposed entered his body (1) through absorption or penetration of the skin, mucous membranes, and other epithelial tissues (including tissues of the mouth, nose and nasal passages, trachea, and conducting airways, particularly where cuts, abrasions, rashes, sores, or other tissue damage are present); and/or (2) through the olfactory bulb; and/or (3) through respiration into the lungs; and/or (4) through ingestion into the digestive tract of small droplets swallowed after entering the mouth, nose, or conducting airways. Once absorbed, the Paraquat entered his bloodstream, attacked his nervous system, and was a substantial factor in causing his to suffer Parkinson's disease.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

75.    Plaintiff MATTHEW COWARD was diagnosed with Parkinson's disease in or about May 2015.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

76.    Plaintiff MATTHEW COWARD had no reason to suspect the diagnosis was connected to his past Paraquat exposure.

**ANSWER:**    Syngenta denies that Plaintiff's alleged diagnosis is connected to exposure to paraquat. Syngenta lacks sufficient knowledge or information to form a belief as to the other allegations in this paragraph, and therefore denies them.

77.    Plaintiff MATTHEW COWARD was never told, either by a medical professional, by media, or by the Defendants, that chronic, low-dose exposure to Paraquat could cause him to suffer Parkinson's disease.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

78.    Defendants' acts and omissions were a legal, proximate, and substantial factor in causing Plaintiff MATTHEW COWARD to suffer severe and permanent physical injuries, pain, mental anguish, and disability, and will continue to do so for the remainder of his life.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

79.    It became necessary for Plaintiff MATTHEW COWARD to incur expenses from medical care and treatment, and related costs and expenses required in the care and treatment of said injuries. Plaintiff MATTHEW COWARD's damages in this respect are presently unascertained as said services are still continuing.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

80.    It will be necessary for Plaintiff MATTHEW COWARD to incur future expenses for medical care and treatment, and related costs and expenses required for future care and treatment. Plaintiff's damages in this respect are presently unascertained as said services are still

continuing. Plaintiff prays leave to insert elements of damages in this respect when the same are finally determined.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

81.    Plaintiff MATTHEW COWARD has suffered general (non-economic) damages in a sum in excess of the jurisdictional minimum of this Court.

**ANSWER:**    Syngenta denies the allegations.

82.    Plaintiff MATTHEW COWARD has suffered special (economic) damages in a sum in excess of the jurisdictional minimum of this Court.

**ANSWER:**    Syngenta denies the allegations.

**CAUSES OF ACTION**

**COUNT I**

**STRICT PRODUCTS LIABILITY DESIGN DEFECT**

83.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**    Syngenta incorporates by reference each allegation set forth in the preceding responses as if fully restated herein.

84.    Defendants are liable to Plaintiff under a products liability theory for marketing a defectively-designed product, as well as for failing to adequately warn of the risk of severe neurological injury caused by chronic, low-dose exposure to Paraquat.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

85.    At all relevant times, Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors designed, manufactured, distributed, and sold Paraquat for use in the State of Florida.

**ANSWER:**    Syngenta admits that certain Syngenta entities, affiliates, and predecessors have, at different points in time, been involved in the manufacture and sale of paraquat.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

86.    At all relevant times and places, the Paraquat that Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors designed, manufactured, distributed, and sold was used in the intended or a reasonably foreseeable manner.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

87.    Plaintiff was exposed to Paraquat that Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors designed, manufactured, distributed, and sold. As a result of that exposure, Paraquat entered Plaintiff's body causing Plaintiff to develop Parkinson's disease.

**ANSWER:**    Syngenta denies that Plaintiff's alleged illnesses were caused by exposure to paraquat.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

88.     The Paraquat that Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors designed, manufactured, distributed, and sold did not perform as safely as an ordinary consumer would have expected it to perform when used in the intended or a reasonably foreseeable manner, in that:

     a.     as designed, manufactured, formulated and packaged Paraquat was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed (or areas near where it had been sprayed); and

     b.     when inhaled, ingested, or absorbed into the body, it was likely to cause neurological damage that was both permanent and cumulative, and repeated low-dose exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

89.     Alternatively, Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors' Paraquat products were defectively designed in that the risk of danger inherent in the challenged design outweighed the benefits of such design, considering, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

90.     The design defect existed when the Paraquat left Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors' possession and control.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

**ANSWER:**    Syngenta denies the allegations. Syngenta hereby demands a trial by jury on all claims so triable.

## COUNT II

### STRICT PRODUCTS LIABILITY FAILURE TO WARN

91.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**    Syngenta incorporates by reference each response set forth in the preceding responses as if fully restated herein.

92.    Defendants are also liable to Plaintiff under a products liability theory based on their failure to adequately warn of the risks of Paraquat.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

93.    When Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors manufactured and sold the Paraquat to which Plaintiff was exposed, it was known or knowable to Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors in light of scientific knowledge that was generally accepted in the scientific community that:

29

     a.     Paraquat was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

     b.     when inhaled, ingested, or absorbed into the body, it was likely cause latent neurological damage that was both permanent and cumulative, and that repeated, low-dose exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

**ANSWER:**    Syngenta denies that plaintiff's alleged illnesses were caused by exposure to paraquat and denies the allegations about the Syngenta Defendants.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

94.    The risk of contracting Parkinson's disease from chronic, low-dose exposure to Paraquat presented a substantial danger to users of Paraquat when the product was used in a reasonably foreseeable manner.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

95.    An ordinary consumer would not have recognized the potential risk of permanent, irreversible neurological damage, including the risk of contracting Parkinson's disease, from chronic, low-dose exposure to Paraquat.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

96.    Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors failed to warn of the potential risk of permanent, irreversible neurological damage from chronic, low-dose exposure to Paraquat, and failed to provide adequate instructions regarding avoidance of these risks.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

97.      As a direct and proximate result of Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors' marketing of a defective product, Plaintiff suffered the injuries described in this Complaint.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

**ANSWER:**   Syngenta denies the allegations. Syngenta hereby demands a trial by jury on all claims so triable.

## COUNT III

### NEGLIGENCE

98.      Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**   Syngenta incorporates by reference each response set forth in the preceding responses as if fully restated herein.

99.      At all relevant times, Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors designed, manufactured, distributed, and sold Paraquat for use in the State of Florida.

**ANSWER:**     Syngenta admits that certain Syngenta entities, affiliates, and predecessors have, at different points in time, been involved in the manufacture and sale of paraquat.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

100.     Plaintiff Matthew Coward was exposed to Paraquat in the State of Florida that Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors manufactured and sold.

**ANSWER:**     Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

101.     The Paraquat to which Plaintiff was exposed was used in the intended or a reasonably foreseeable manner.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

102.     At all times relevant to this claim, in researching, designing, manufacturing, packaging, labeling, distributing, and selling Paraquat, Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors owed a duty to exercise ordinary care for the health and safety of the persons whom it was reasonably foreseeable could be exposed to Paraquat, including Plaintiff MATTHEW COWARD.

**ANSWER:**     This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

103.    When Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors designed, manufactured, packaged, labeled, distributed, and sold the Paraquat to which Plaintiff was exposed, it was reasonably foreseeable that Paraquat:

      a.    was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

      b.    when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it has been sprayed or areas near where it has been sprayed, it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

**ANSWER:**    Syngenta denies that Plaintiff's alleged illnesses were caused by exposure to paraquat.  The remainder of this paragraph contains legal conclusions to which no response is due. To the extent a response is due, denied.

104.    In breach of the aforementioned duty to Plaintiff, Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors negligently:

      a.    failed to design, manufacture, formulate, and package Paraquat to make it unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed;

      b.    designed, manufactured, and formulated Paraquat such that it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause clinically significant neurodegenerative disease, including Parkinson's disease;

      c.    failed to conduct adequate research and testing to determine the extent to which exposure to Paraquat was likely to occur through inhalation, ingestion, and absorption into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed;

      d.    failed to conduct adequate research and testing to determine the extent to which Paraquat spray drift was likely to occur, including its propensity to drift, the distance

it was likely to drift, and the extent to which Paraquat spray droplets were likely to enter the bodies of persons spraying it or other persons nearby during or after spraying;

e.      failed to conduct adequate research and testing to determine the extent to which Paraquat was likely to cause or contribute to cause latent neurological damage that was both permanent and cumulative, and the extent to which repeated exposures were likely to cause or contribute to cause clinically significant neurodegenerative disease, including Parkinson's disease;

f.      failed to direct that Paraquat be used in a manner that would have made it unlikely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

g.      failed to warn that Paraquat was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause clinically significant neurodegenerative disease, including Parkinson's disease.

**ANSWER:**    Syngenta denies that Plaintiff's alleged illnesses were caused by exposure to paraquat.  The remainder of this paragraph contains legal conclusions to which no response is due. To the extent a response is due, denied.

105.    Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors knew or should have known that users would not realize the dangers of exposure to Paraquat and negligently failed to take reasonable steps to prevent the foreseeable risk of harm from exposure to Paraquat.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

106.    As a direct and proximate result of Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors' negligence, Plaintiff suffered the injuries described in this Complaint.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

107.    Additionally, in the course of designing, manufacturing, packaging, labeling, distributing, and selling Paraquat, Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors violated laws, statutes, and regulations, including but not limited to sections of Title 32, Chapter 487, Florida Pesticide law.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

108.    Plaintiff was a member of the class of persons that said laws, statutes, and regulations were intended to protect.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

109.    Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors' violations of said laws, statutes, and regulations were also substantial factors in causing Plaintiff's injuries.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

110.    The injuries that resulted from Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors' violations were the kind of occurrence the laws, statutes, and regulations were designed to prevent.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is due, denied.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred,

attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

**ANSWER:**   Syngenta denies the allegations. Syngenta hereby demands a trial by jury on all claims so triable.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

111.   Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**   Syngenta incorporates by reference each response set forth in the preceding responses as if fully restated herein.

112.   At all relevant times, Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors engaged in the business of designing, manufacturing, distributing, and selling Paraquat and other restricted-use pesticides and held themselves out as having special knowledge or skill regarding Paraquat and other restricted-use pesticides.

**ANSWER:**   Syngenta admits that certain Syngenta entities, affiliates, and predecessors have, at different points in time, been involved in the manufacture and sale of paraquat.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

113.    At all relevant times, Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors designed, manufactured, distributed, and sold Paraquat for use in the State of Florida.

**ANSWER:**    Syngenta admits that certain Syngenta entities, affiliates, and predecessors have, at different points in time, been involved in the manufacture and sale of paraquat.  Syngenta lacks sufficient knowledge or information to form a belief as to the remaining allegations, and therefore denies them.

114.    Plaintiff was exposed to Paraquat in the State of Florida that Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors designed, manufactured, distributed, and sold.

**ANSWER:**    Syngenta lacks sufficient knowledge or information to form a belief as to these allegations, and therefore denies them.

115.    The Paraquat to which Plaintiff MATTHEW COWARD was exposed was not fit for the ordinary purposes for which it was used, and in particular:

      a.    it was designed, manufactured, formulated, and packaged such that it was likely to be inhaled, ingested, and absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed; and

      b.    when inhaled, ingested, or absorbed into the bodies of persons who used it, who were nearby while it was being used, or who entered fields or orchards where it had been sprayed or areas near where it had been sprayed, it was likely to cause neurological damage that was both permanent and cumulative, and repeated exposures were likely to cause neurodegenerative disease, including Parkinson's disease.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due. To the extent a response is required, Syngenta lacks sufficient knowledge or information to form a belief as to the allegations, and therefore denies them.

116.    As a direct and proximate result of Chevron U.S.A., Inc., the Syngenta Defendants, Does One through Sixty, and their corporate predecessors' breach of implied warranty, Plaintiff suffered the injuries herein described.

**ANSWER:**    This paragraph contains legal conclusions to which no response is due.  To the extent a response is due, denied.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

**ANSWER:**    Syngenta denies the allegations. Syngenta hereby demands a trial by jury on all claims so triable.

## COUNT V

### PUNITIVE DAMAGES

117.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**    Syngenta incorporates by reference each response set forth in the preceding responses as if fully restated herein.

118.    Defendants' conduct as alleged herein was done with oppression, fraud, and malice. Defendants were fully aware of the safety risks of Paraquat. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion of Paraquat to mislead farmers and consumers.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

119.   This was not done by accident or through some justifiable negligence. Rather, Defendants knew that it could turn a profit by convincing the agricultural industry that Paraquat did not cause Parkinson's Disease, and that full disclosure of the true risks of Paraquat would limit the amount of money Defendants would make selling Paraquat in Florida. Defendants' objective was accomplished not only through its misleading labeling, but through a comprehensive scheme of selective fraudulent research and testing, misleading advertising, and deceptive omissions as more fully alleged throughout this Complaint. Plaintiff was denied the right to make an informed decision about whether to purchase, use, or be exposed to an herbicide, knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiff's rights.

**ANSWER:**   This paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

120.   There is no indication that Defendants will stop their deceptive and unlawful marketing practices unless they are punished and deterred. Accordingly, Plaintiff requests punitive damages against the Defendants for the harms caused to Plaintiff.

**ANSWER:**   Syngenta denies that it engages in deceptive or unlawful marketing practices. The remainder of this paragraph contains legal conclusions to which no response is due.   To the extent a response is due, denied.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all relief as this Court deems just and proper. Additionally, Plaintiff demands a jury trial on all issues contained herein.

**ANSWER:**    Syngenta denies the allegations. Syngenta hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this Court to enter judgment in Plaintiff's favor and against the Defendants for:

      a.    actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

      b.    exemplary and punitive damages sufficient to punish and deter the Defendants and others from future fraudulent practices;

      c.    pre-judgment and post-judgment interest;

      d.    costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

      e.    any other relief the Court may deem just and proper.

**ANSWER:**    Syngenta denies the allegations.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all of the triable issues within this pleading.

**ANSWER:**    Syngenta hereby demands a trial by jury on all claims so triable.

## RESERVATION OF RIGHTS AND DEFENSES

### GENERAL DENIAL

Syngenta generally denies liability for all claims alleged in the Complaint and denies each allegation that has not been expressly admitted herein.

### INCORPORATION BY REFERENCE

Syngenta states that on February 14, 2022, the Court issued a ruling that Plaintiffs failed to state claims for public nuisance and that claims without a Minnesota connection could not proceed

under Minnesota's consumer protection laws. ECF No. 954 at 25, 32-33. Syngenta hereby incorporates that ruling by reference.

## DEFENSES AND AFFIRMATIVE DEFENSES

Syngenta generally denies liability for all claims alleged in the Complaint and denies each allegation that has not been expressly admitted herein. By including these defenses in this Answer, Syngenta is not assuming the burden of proof on any such defense and is not conceding that Syngenta bears any burden of proof on these defenses, except as required by law. Syngenta reserves the right to assert additional defenses or otherwise supplement this Answer upon discovery of additional facts or evidence.

## CHOICE OF LAW

For purposes of the affirmative defenses, Syngenta applies the law of Florida. To the extent the Court determines that a different state's law applies to all or some of these defenses, Syngenta hereby applies the law of that state (or states).

### FIRST AFFIRMATIVE DEFENSE
### (Any Liability Attributable to Plaintiff or Others)

If there is any negligence or liability of any of the parties named herein, it is the sole and exclusive negligence and liability of the other entities or individuals, and not of Syngenta.

### SECOND AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

The Complaint, and each cause of action therein, fails to state facts sufficient to constitute a cause of action upon which relief may be granted.

### THIRD AFFIRMATIVE DEFENSE
### (No Personal Jurisdiction)

To the extent that Plaintiff's alleged injuries arise out of or relate to Syngenta's alleged activities outside the State of Florida the Court lacks personal jurisdiction over Syngenta.

## FOURTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiff's claims are barred in whole or in part by the applicable provisions of the pertinent statutes of limitations and/or repose, including but not limited to, F.S.A. § 95.11(3), (4).

## FIFTH AFFIRMATIVE DEFENSE
### (Statute of Repose)

Plaintiff's claims are barred in whole or in part by the applicable provisions of the pertinent statute of repose, F.S.A. § 95.031(2)(b).

## SIXTH AFFIRMATIVE DEFENSE
### (Federal Preemption)

Plaintiff's claims against Syngenta are barred, in whole or in part, by the Supremacy Clause, Article VI, Section 2, of the United States Constitution, because those claims are preempted by federal law, including but not limited to the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 et seq. ("FIFRA"), because they seek to impose "requirements for labeling and packaging in addition to or different from those required" under FIFRA 7 U.S.C. § 136vb.

## SEVENTH AFFIRMATIVE DEFENSE
### (Conflict Preemption)

Plaintiff's claims against Syngenta are barred, in whole or in part, by the doctrine of conflict preemption because Plaintiff's claims "stand[ ] as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress" under FIFRA. *Grier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 873 (2002).

## EIGHTH AFFIRMATIVE DEFENSE
### (Compliance with FIFRA)

The conduct of Syngenta, and the characteristics and other properties of paraquat-containing products sold by Syngenta (including the labels and warnings for paraquat-containing

products) at all times complied with FIFRA, its implementing regulations, and other mandates imposed by the United States Department of Agriculture ("USDA") and the Environmental Protection Agency ("EPA") with respect to pesticides. 7 U.S.C. § 136 et seq.

### NINTH AFFIRMATIVE DEFENSE
### (Florida Statutory Government Rules Defense)

Syngenta avers that Section 768.1256, Florida Statutes, the Government Rules Defense, preempts and bars, in whole, or in part, Plaintiff's claims and causes of action.

### TENTH AFFIRMATIVE DEFENSE
### (Florida Statutory State of the Art Defense)

The State of the Art Defense, Section 768.1257, bars in whole or in part, Plaintiff's cause of action based upon defective design because the product Plaintiff was allegedly exposed to conformed with the state of the art of scientific and technical knowledge and other circumstances that existed at the time it was manufactured.

### ELEVENTH AFFIRMATIVE DEFENSE
### (Open and Obvious Danger Doctrine)

Plaintiff's claims are barred, in whole or in part, by the open and obvious danger doctrine. Chemicals like Paraquat have known risks or dangers that can be unavoidable even within the scope of its intended use, but those risks or dangers are outweighed in comparison to the benefits conferred.

### TWELFTH AFFIRMATIVE DEFENSE
### (Lack of Privity)

Plaintiff's breach of implied warranty claim fails because Plaintiff lacks privity with Syngenta.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (Compliance with Standards of Care and Regulations; Products Not Defective)

Plaintiff's claims must be dismissed because Syngenta's paraquat-containing products were properly manufactured, marketed, and distributed, were not defective in any manner, were at all relevant times reasonably fit and suited for the purpose for which they were manufactured, and were delivered with sufficient advice and warnings that were consistent with the state of the existing scientific, medical, technological, and industrial knowledge. Syngenta complied with all applicable government standards and regulations and all applicable standards of care under all laws, regulations, industry practice, and state-of-the-art knowledge.

### FOURTEENTH AFFIRMATIVE DEFENSE
#### (No Causation and/or Proximate Causation)

Plaintiff's claims are barred because Plaintiff's alleged injuries and damages, which injuries and damages at all times are denied, were not legally or proximately caused by any acts or omissions by Syngenta and/or were caused, if at all and to the extent such causation can even be identified, by the conduct of Plaintiff himself, third parties over which Syngenta had no authority or control, and/or events and conditions wholly unrelated to Syngenta. Syngenta cannot be held liable for loss or damage caused by such independent persons or entities, whether or not they are parties to this action.

### FIFTEENTH AFFIRMATIVE DEFENSE
#### (Good Faith)

Any and all actions taken by Syngenta with respect to any of the matters alleged in the Complaint were taken in good faith and in accordance with established practice.

### SIXTEENTH AFFIRMATIVE DEFENSE
#### (Due Care)

Plaintiff's claims are barred, in whole or in part, because Syngenta exercised due care and took appropriate precautions against any reasonably foreseeable acts or omissions of third parties and any reasonably foreseeable consequences of such acts or omissions.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (No Duty to Warn)

Syngenta had no duty to warn Plaintiff of any risks attendant to the use or application of its products beyond those requiring disclosure by the EPA and/or any other federal laws or regulations, and specifically denies it had any duty to warn of the alleged risks identified by Plaintiff in the Complaint or that such risks exist or existed. Syngenta is entitled to rely upon knowledgeable, learned and sophisticated market intermediaries, suppliers and applicators to pass on necessary warnings, if any.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Plaintiff's Fault or Negligence)

In the event that Plaintiff establishes liability on the part of Syngenta, which liability is specifically denied, Syngenta avers that any injury or damages alleged in the Complaint were caused by the contributory or comparative negligence and/or fault of Plaintiff, thereby barring Plaintiff's recovery in whole or in part.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Assumption of Risk)

Plaintiff assumed the risk of or consented to any injury or damages alleged in the Complaint, thereby barring any recovery in whole or in part by Plaintiff herein.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Awareness of Product's Condition)

If the product allegedly involved in this action was defective or unreasonably dangerous, which Syngenta expressly denies, Plaintiff was aware thereof and unreasonably proceeded to make use of the product in that condition.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Misuse, Abuse, or Alteration of Products)

There can be no liability against Syngenta to the extent Plaintiff's alleged damages were caused by a misuse, abuse, and/or alteration of any Syngenta product, or the failure to act in accordance with the labels and directions provided by Syngenta and/or others.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Plaintiff's claims are barred in whole or in part because Plaintiff failed to mitigate his alleged injuries and damages, or both.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Waiver, Estoppel, Laches, Unclean Hands)

Plaintiff's claims are barred, in whole or in part, based on the equitable doctrines of waiver, estoppel, laches, unclean hands, and/or *in pari delicto*.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

Plaintiff's claims against Syngenta for damages are barred, in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover any portion of the damages alleged in the Complaint.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Consequential, Special, Indirect or Incidental Damages)

Plaintiff's claims are barred, in whole or in part, by Syngenta's disclaimer language, including, but not limited to, disclaimer language on its product label(s).

### TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Speculative Damages)

Plaintiff's claims are barred, in whole or in part, because Plaintiff's damages are legally uncertain, remote, indirect, and/or speculative.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (No Right/Entitlement to Attorneys' Fees)

Plaintiff fails to state a claim upon which attorneys' fees may be awarded.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### (Several Liability)

Each Defendant may only be severally liable for any injuries or expenses. Plaintiff's alleged damages are not indivisible but comprise separate and discrete costs. *See* §§ 768.31, 768.81, Fla. Stat. (2022). Plaintiff's injuries and damages, if any, were legally caused by the acts or omissions of persons other than Syngenta, whether named or unnamed in the Complaint. Such negligence or fault must be apportioned to those named or unnamed parties. Syngenta's liability, if any, must be apportioned in accordance with the percentage of fault allocated to it by the trier of fact in accordance with section 768.81, Florida Statutes (2022), and *Fabre v. Martin*, 623 So. 2d 1182 (Fla. 1993).

## TWENTY-NINTH AFFIRMATIVE DEFENSE
### (Consequential, Special, Indirect or Incidental Damages)

Syngenta reserves all rights of contribution and/or indemnity and for the apportionment of fault against Plaintiff and any other persons or entities to the fullest extent permitted. Syngenta expressly reserves the right, in the event that Plaintiff settles with other persons or entities, to seek a credit or offset for any portion of any of Plaintiff's alleged injuries that may be attributed to such other persons or entities. Syngenta is entitled to offset against any judgment entered against it of all amounts recovered by or benefiting Plaintiff, and resulting from any settlement, judgment or any other basis permitted by law.

## THIRTIETH AFFIRMATIVE DEFENSE
### (Punitive Damages)

To the extent Plaintiff seeks punitive and/or exemplary damages, Plaintiff is barred from recovering punitive and/or exemplary damages because Plaintiff fails to state facts sufficient to

state a claim for punitive and/or exemplary damages and Syngenta committed no acts justifying an award of punitive and/or exemplary damages.

## RESERVATION OF RIGHTS AND DEFENSES

Syngenta's pleading is based on its reasonable investigation of Plaintiff's claims to date. Syngenta has not knowingly or intentionally waived any applicable defenses and reserves the right to assert and rely on such other applicable defenses as may become available or apparent during discovery proceedings. Syngenta reserves the right to amend its Answer and/or Affirmative Defenses accordingly, and/or withdraw Affirmative Defenses that it determines to be inapplicable during the course of subsequent discovery. Additionally, Syngenta reserves its rights regarding preemption, which it has contested.

Dated: April 13, 2022                    Respectfully submitted,

*/s/ Ragan Naresh*
Ragan Naresh
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 389-5000
ragan.naresh@kirkland.com

Leslie Smith
Brad Weidenhammer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2000
leslie.smith@kirkland.com
bweidenhammer@kirkland.com

*Attorneys for Syngenta Defendants*

### CERTIFICATE OF SERVICE

I certify that on April 13, 2022, I electronically filed the foregoing with the Clerk of this

Court by using the CM/ECF system, which will provide notice to all users of record.

*/s/ Ragan Naresh*
Ragan Naresh